UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD W. BRATTON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>RON BROOMFIELD, et al.,<br><br>　　　　Defendants. | Case No. 20-cv-03885 BLF (PR)<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND; DIRECTING PLAINTIFF TO FILE THIRD AMENDED COMPLAINT; DENYING MOTION FOR PRELIMINARY INJUNCTION AND OTHER MOTION**<br><br>(Docket Nos. 30, 42, 43) |

　　Plaintiff, a California inmate, filed the instant *pro se* civil rights action pursuant to 42 U.S.C. § 1983, against prison officials and staff at San Quentin State Prison ("SQSP") where he is currently incarcerated. Dkt. No. 1. The second amended complaint ("SAC") is the operative complaint in this matter. Dkt. No. 21. The Court found the SAC, liberally construed, stated a cognizable Eighth Amendment claim and ordered service on Defendants S. Albritton, Dr. S. Garrigan, Dr. Sandler, A. Maxfield, and N. Smith. Dkt. No. 22.

　　Defendants filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiff has failed to state a claim for relief based on his pleading and supporting papers and that they are entitled to qualified immunity. Dkt.

No. 30. Plaintiff filed opposition, Dkt. No. 35, and Defendants filed a reply, Dkt. No. 38. Plaintiff subsequently filed another motion for preliminary injunction. Dkt. No. 42.

For the reasons set forth below, Defendants' motion to dismiss is GRANTED but with leave to amend.

## DISCUSSION

### I. <u>Plaintiff's Claims</u>

According to the SAC, Plaintiff arrived at SQSP in July 2016, as an "ADA qualified inmate/patient." Dkt. No. 21 at 5. Plaintiff suffers from "chronic lymphocytic leukemia, thalassemia, and hypertension." *Id.* Plaintiff conferred with his oncologist, who gave a written recommendation that Plaintiff be single-celled to protect him from "contagious diseases and immune-compromising viruses in the illegally celled scheme." *Id.* Plaintiff submitted a reasonable accommodation request, which was denied at a meeting on May 25, 2017. *Id.* at 4.

Three years later, after the onset of Covid-19 virus in March 2020, Plaintiff filed a second reasonable accommodation request on April 9, 2020. *Id.* at 4, 6. The request was denied by the "Reasonable Accommodation Response Panel," which was comprised of the following: S.R. Albritton (ADA Coordinator); Dr. S. Garrigan (Chief Physician); Dr, Sandler (Psychologist-Clinical (CF)); A. Maxfield (Correctional II Appeals Coordinator); and Nicole Smith (Staff Service Analyst). *Id.* at 4-5. Plaintiff claims that all the defendants were informed "about the dangers of serious health hazards by viruses and diseases in the close quarters of the one-man-cells, containing the over-crowded two men in a cell." *Id.* at 6. Plaintiff claims that this situation "then turned to tragedy" when dozens of unvaccinated and untested infected inmates were transferred to SQSP. *Id.* Plaintiff claims that a few days after the first inmates were found to be infected, a few dozen were transferred into single-cells and forced to double-cell; Plaintiff was "doubled-up" and infected in June 2020. *Id.* Plaintiff seeks injunctive relief to be single-celled for

2

his medical safety and damages. *Id.* The Court liberally construed the allegations as stating an Eighth Amendment claim. Dkt. No. 22 at 2-3.

## II.  **Motion to Dismiss**

Failure to state a claim is grounds for dismissal under Rule 12(b)(6). Dismissal for failure to state a claim is a ruling on a question of law. *See Parks School of Business, Inc., v. Symington*, 51 F.3d 1480, 1483 (9th Cir. 1995). "The issue is not whether plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.... Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 553-56 (2007) (citations omitted). A motion to dismiss should be granted if the complaint does not proffer "enough facts to state a claim for relief that is plausible on its face." *Id*. at 570. To state a claim that is plausible on its face, a plaintiff must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). From these decisions, the following "two principles" arise: "First to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Review is limited to the contents of the complaint, *see Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994), including documents physically attached to

the complaint or documents the complaint necessarily relies on and whose authenticity is not contested. *See Lee v. County of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). In addition, the court may take judicial notice of facts that are not subject to reasonable dispute. *See id*. at 688 (discussing Fed. R. Evid. 201(b)). Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the non-moving party. *See Symington*, 51 F.3d at 1484.

On the other hand, a plaintiff may plead himself out of a claim by including unnecessary details contrary to his claims. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A court, for example, is not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint. *Bell Atlantic Corp.*, 550 U.S. at 555; *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998). After all, "conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim." *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir. 1988). A court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg*, 18 F.3d at 754-55.

Qualified immunity may be raised in a Rule 12(b)(6) motion and granted where defendants are entitled to the defense based on plaintiff's allegations. *Cousins v. Lockyer*, 568 F.3d 1063, 1071 (9th Cir. 2009).

### A.   Eighth Amendment Deliberate Indifference

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Amendment imposes duties on these officials, who must provide all prisoners with the basic necessities of life such as food, clothing, shelter, sanitation, medical care and personal safety. *See Farmer*, 511 U.S. at 832; *DeShaney v. Winnebago County Dep't of*

4

*Social Servs.*, 489 U.S. 189, 199-200 (1989).  A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, *id*. (citing *Wilson*, 501 U.S. at 297).

A prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.  *Farmer* at 837.  The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference."  *Id.*  If a prison official should have been aware of the risk, but did not actually know, the official has not violated the Eighth Amendment, no matter how severe the risk.  *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).

Defendants first argue that Plaintiff fails to state a claim for deliberate indifference because he does not allege that Defendants knew at the time that double-celling alone posed a substantial risk of serious harm.  Dkt. No. 30 at 11.  Defendants assert that Plaintiff does not allege that they knew maintaining the status quo, i.e., double-celling, would create an excessive risk of his catching Covid-19 at the time Defendants denied the request.  Defendants point out that Plaintiff claims he requested single-cell housing on April 9, 2020, and that a similar request was denied in 2017.  *Id.*, citing SAC at 4.  Defendants also assert that Plaintiff does not allege harm that resulted from the 2020 denial, nor any changes to his condition after the first denial, that would put Defendants on notice that Plaintiff needed isolation.  *Id.* at 12.  Defendants argue that Plaintiff claims his second request was denied at some time *before* the transfer of inmates into the institution that allegedly caused the outbreak.  *Id.*  Defendants assert that in the absence of any known outbreak, Plaintiff does not specify how the decision to allow him to be quarantined with a cellmate posed a substantial, rather than merely theoretical, risk, or that Defendants would have had reason to know of any such risk.  *Id.*  Defendants assert that at the time of their

5

decision, Plaintiff does not contend there were "conditions posing a substantial risk of serious harm" within the institution, but that rather, he appears to indicate such conditions were a transfer of inmates that occurred *after* Defendants reached their decision. *Id.*

Second, Defendants argue that Plaintiff fails to allege sufficient injury or causation to state an Eighth Amendment claim. Dkt. No. 30 at 13. Specifically, Defendants assert that Plaintiff does not contend that he was infected as a result of being housed with an infected cellmate, or that he suffered any symptoms from his alleged infection or other ill-effects arising in the two-and-a-half years since his test. *Id.* Defendants state that in other words, Plaintiff does not provide any facts upon which to conclude that his Covid test was anything more than a false positive, or a positive test with no symptoms. *Id.* Defendants assert that courts have dismissed claims complaining of exposure to Covid-19 where the exposure did not result in any actual injury. *Id.*, citing *Pinson v. Othon*, No. 20-cv-168-TUC-RM, 2021 WL 1056391, at *2-3 (D. Arix. Mar. 19, 2021) (dismissing claim alleging past deficiencies in Covid-19 precautions where prisoner did not allege any tangible resulting harm); *see also Ramos v. California Dep't of Corr. and Rehab.*, No. 2:22-cv-0004-DB, 2022 WL 4292379, at *3 (E.D. Cal. Sept. 16, 2022) (finding stand-alone claim of mere Covid-19 infection insufficient to state claim where prisoner was asymptomatic and did not suffer actual harm in the form of physical injury due to housing placement); *Thomas v. Chu*, 2020 WL 5408944, at *8-9 (S.D. Cal. Sept. 9, 2020) (dismissing claim requesting single-cell due to vulnerable medical condition where prisoner did not allege any physical harm resulting from his fear of infection). As in these cases, Defendants assert Plaintiff contends that he tested positive for Covid-19 but makes no allegation that he suffered any symptoms or other physical injury, even temporarily. Dkt. No. 30 at 14.

Lastly, Defendants assert that Plaintiff also fails to allege that Defendants' actions caused his injury, *i.e.*, their denial of his request for a single cell in April 2020 caused his alleged infection. Dkt. No. 30 at 15. Defendants contend that Plaintiff does not specify whether it was his housing status, the transfer of inmates from San Quentin, or general

6

community spread that caused his positive Covid-19 test, and therefore fails to state a causal connection. *Id.*, citing *Johnson v. Allison*, No. 2:21-cv-0828 KJN P, 2022 WL 1444409, *9 (E.D. Cal. May 6, 2022) (finding plaintiff failed to set forth facts demonstrating that he became infected with Covid-19 as result of his housing rather than as a result of being previously exposed to Covid-19); *see also Ramos*, 2022 WL 4292379, at *3 (dismissing claim where allegations did not directly allege prisoner's infection came from his cellmate).

In opposition, Plaintiff asserts that Defendants' failure to act on their knowledge of his serious medical condition and the recommendations of the cancer-oncologist specialist violated his Eighth Amendment rights. Dkt. No. 35 at 4. Plaintiff asserts that the Covid-19 virus was found at San Quentin on March 27, 2020. *Id.* at 5. Plaintiff submitted his second request for a "reasonable accommodation" cell on April 9, 2020, and was again denied "with no mention nor concern for [his] health." *Id.* at 6. Plaintiff asserts that on May 23, 2020, he had a parole board hearing during which an unidentified "board-member "made a snide remark about an attack by gang Hispanic inmates on [Plaintiff] in 1994." *Id.* Plaintiff asserts that four days later, an inmate with clears signs of infection (profuse sweating and complaining of loss of taste) was moved into his cell; this inmate came from the block where the transferred inmates from Chino were housed. *Id.* Plaintiff was tested a week or two later and tested positive. *Id.* Plaintiff states that he had no visible symptoms at first, but a routine blood pressure check showed "200 over 150" which has taken over a year for it to come down to reasonable levels. *Id.* Plaintiff also claims experiencing a slow "thought pattern," general malaise, and weakened legs. *Id.* at 7. Plaintiff cites to a consolidated civil lawsuit in Marin County regarding the transfer of infected inmates to SQSP and the court's ruling in that matter, finding prison officials had violated petitioners' constitutional rights. *Id.* at 7-8. Plaintiff asserts that he remains vulnerable to the health risks of Covid-19 due to his ongoing medical conditions. *Id.* at 8.

In reply, Defendant asserts that Plaintiff's opposition introduces new facts that

7

cannot be considered in deciding their motion to dismiss. Dkt. No. 38 at 1. Defendants also assert that even if the Court considered the new facts to determine whether leave to amend should be granted, those new facts confirm that the SAC should be dismissed, leave to amend would be futile, and Defendants are entitled to qualified immunity. *Id.* at 1-2. For example, Defendants point out that Plaintiff provides evidence that Defendants, as members of a Reasonable Accommodation Panel, denied his request for single-cell on May 7, 2020, which was several weeks *before* the Covid-19 outbreak at SQSP following the transfer of inmates from Chino. *Id.* at 2. Defendants assert that this evidence indicates that when Defendants denied Plaintiff's request for single-cell status, they were only aware of a generalized risk of harm to Plaintiff, not a substantial one as required by the Eighth Amendment. *Id.* Defendants assert that the extra-record evidence also shows that Defendants examined Plaintiff's request for single-cell status from the perspective of whether an accommodation for his physical disability was required under the *Armstrong* Remedial Plan or the ADA, and not whether single-cell status was medically necessary. *Id.*, citing Dkt. No. 35 at 42. Furthermore, Defendants specifically informed Plaintiff that they deferred to healthcare staff as to whether he should be single-celled based on his reported medical conditions. *Id.* Defendants assert that they therefore acted reasonably to the risk of harm to Plaintiff. *Id.* Moreover, Defendants point out that the evidence confirms that Plaintiff's Covid-19 infection had resolved, *id.* at 49, the healthcare staff has been closely monitoring his medical condition and providing appropriate care, *id.* at 55-56, and that in September 2020, his hematologist and oncologist noted that Plaintiff "continued to do extremely well" and his "blood counts continued to be excellent…," *id.* at 56. Defendants assert that these facts undermine Plaintiff's claim that Defendants caused him any discernible harm. Dkt. No. 38 at 2.

Defendants also assert that Plaintiff's opposition does not defend the SAC or even contend that the allegations therein are sufficient to state a claim. *Id.* at 2-3. Defendants assert that Plaintiff instead relies on new allegations and exhibits to oppose their motion,

and that by doing so, he is implicitly conceding that the SAC fails to state a claim. *Id.* at 3. Defendants conclude that the issue then boils down to whether leave to amend should be granted based on the new allegations and exhibits. *Id.* Defendants conclude that their motion should be granted, and that leave to amend should not be granted. *Id.*

After carefully reviewing the SAC, the supporting documents, and the pleadings, the Court finds the SAC fails to state an Eighth Amendment claim against Defendants based on their denial of his request for single-cell status as asserted in Defendants' motion. Although the Court liberally construed the allegations as stating an Eighth Amendment claim, Defendants have persuasively pointed out the pleading deficiencies, *i.e.*, the lack of Defendants' awareness of an excessive risk to Plaintiff at the time they denied his request for a single-cell, the lack of any injury, and failure to establish causation. *See supra* at 5-7. Furthermore, in opposition, Plaintiff does not defend the allegations in the SAC but raises new allegations with new evidence. *See supra* at 7; Dkt. No. 35. In other words, Plaintiff has failed to argue that the factual allegations in the SAC, taken as true, are sufficient to plausibly suggest an entitlement to relief. *See Starr*, 652 F.3d at 1216. The fact that Plaintiff instead offers additional allegations and evidence indicates a concession that the SAC is not sufficient. Accordingly, Defendants' motion to dismiss the SAC for failure to state a claim for relief should be granted.

The only issue, as Defendants contend, is whether the dismissal should be with leave to amend. A party may amend its pleading only with the opposing party's written consent or the court's leave; leave should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). Leave need not be granted where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay. *See Janicki Logging Co. v. Mateer*, 42 F.3d 561, 566 (9th Cir. 1994); *Roberts v. Arizona Bd. of Regents*, 661 F.2d 796, 798 (9th Cir. 1981). A district court's discretion to deny leave to amend is particularly broad where the plaintiff has previously filed an amended complaint. *Wagh v. Metris Direct, Inc.*, 363 F.3d 821,

9

830 (9th Cir. 2003); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). A district court should deny leave to amend on futility grounds if "it appears beyond doubt that the plaintiff's proposed amended complaint would not remedy the deficiencies in the previous complaint." *Adam v. Hawaii*, 235 F.3d 1160, 1164 (9th Cir. 2001). Put differently, futility of amendment frequently means that it is not factually possible for plaintiff to amend the complaint so as to cure the deficiencies. *Schmier v. United States Court of Appeals*, 279 F.3d 817, 824 (9th Cir. 2002).

The Court finds that based on the new allegations and evidence included in Plaintiff's opposition, leave to amend should be granted after construing the facts and inferences in the light most favorable to Plaintiff. There is no dispute that Plaintiff had serious medical issues that existed before the Covid-19 epidemic, that he had requested single-cell status in 2017 and again in April 2020, and that the requests were denied. Furthermore, Plaintiff's allegation that Covid was found at SQSP on March 27, 2020, is based on a memorandum from the Warden notifying inmates that "a member of our staff has tested positive" and that the prison was working to keep the "entire CDCR Community safe and well." Dkt. No. 35 at 30. Construing the allegations in the light most favorable to Plaintiff, this memorandum is sufficient to establish the inference that Defendants were made aware of a serious risk of harm to Plaintiff which had not previously existed. Accordingly, Plaintiff has plausibly alleged that Defendants acted with deliberate indifference when they failed to take reasonable steps to abate that risk when they denied his renewed request for single-cell status. Moreover, Plaintiff's new allegations indicate that four days after his parole hearing on May 23, 2020, an infected inmate from the block "the inmates were housed in from Chino was moved into [his] cell." Dkt. No. 35 at 6. This would be around the time that infected inmates from Chino arrived at SQSP at the end of May 2020. Construing the facts in the light most favorable to Plaintiff, he has plausibly alleged that Defendants' failure to grant him single-cell status was the cause of Plaintiff getting infected with Covid-19.

Defendants also argue that Plaintiff's new allegations regarding ongoing harm caused by Covid-19 are contradicted by the evidence he attaches to his opposition. However, the Court does not agree that such evidence establishes that Plaintiff cannot state a claim if granted leave to amend. For example, the evidence indicates that in September 2020, months after the SQSP outbreak, his oncologist noted that Plaintiff "continued to do extremely well" and his "blood counts continued to be excellent." Dkt. No. 35 at 56. But this evidence merely indicates that Plaintiff was doing well in September 2020 with regard to his *cancer*, and is not evidence that Plaintiff did not suffer when he tested positive for Covid-19 in June 2020. For the same reason, the evidence that Plaintiff's Covid-19 infection had "resolved" by the time Plaintiff's grievance had been denied at the final level in November 2020, does not prove that he did not suffer in the preceding months. *Id.* at 49.

Based on the foregoing, the Court finds that the SAC fails to state an Eighth Amendment claim of deliberate indifference for Defendants' denial of Plaintiff's request for single-cell status such that Defendants' motion to dismiss should be granted. *See Clegg*, 18 F.3d at 754-55. However, because the new allegations raised in Plaintiff's opposition indicate that he may be able to amend the claim to cure the deficiencies of the SAC, dismissal shall be with leave to amend.

## B. Qualified Immunity

Defendants also assert that they are entitled to qualified immunity because the law was not clearly established, at the time Defendants denied Plaintiff single-cell housing, that continuing Plaintiff's housing status during a pandemic and without knowledge of an outbreak would violate his Eighth Amendment rights. Dkt. No. 30 at 16.

The defense of qualified immunity protects "government officials… from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The rule of "qualified immunity protects 'all but the

plainly incompetent or those who knowingly violate the law.'" *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. *Id.* at 205.

A court considering a claim of qualified immunity must consider two questions: (1) whether the plaintiff has alleged the deprivation of an actual constitutional right, and (2) whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (overruling the sequence of the two-part test that required determining a deprivation first and then deciding whether such right was clearly established, as required by *Saucier*). The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *Id.* at 236.

"[A] right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.' In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Carroll v. Carman*, 574 U.S. 13, 16 (2014) (citations omitted). The inquiry of whether a constitutional right was clearly established must be undertaken in light of the "specific context" of the case, not as a broad general proposition. *Saucier*, 533 U.S. at 202. On the other hand, to define the law in question too narrowly would be to allow defendants to define away all potential claims. *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). Ultimately, however, the dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Saucier*, 533 U.S. at 202.

A court determining whether a right was clearly established looks to "Supreme Court and Ninth Circuit law existing at the time of the alleged act." *Community House, Inc. v. Bieter*, 623 F.3d 945, 967 (9th Cir. 2010) (citing *Osolinski v. Kane*, 92 F.3d 934,

12

936 (9th Cir. 1996)). In the absence of binding precedent, the court may look to all available decisional law, including the law of other circuits and district courts. *See Carrillo v. County of Los Angeles*, 798 F.3d 1210, 1223 (9th Cir. 2015) (only in absence of decisional authority by Supreme Court or Ninth Circuit are other sources of decisional law, such as out-of-circuit cases, considered).

Defendants assert that they are entitled to immunity under the first prong under *Saucier* because Plaintiff fails to state an Eighth Amendment claim. Dkt. No. 30 at 17. But even if the allegations are sufficient to state such a claim, Defendants assert that they are entitled to immunity under the second prong because neither binding precedent nor a robust consensus of persuasive authority would have put every reasonable official on notice that maintaining Plaintiff's housing status would be unlawful absent a particularized risk to him from double-celling during the Covid-19 pandemic. *Id.* Defendants assert that the SAC notably does not allege that Defendants denied him single-cell housing after the widely reported Covid-19 outbreak at SQSP. *Id.* In opposition, Plaintiff does not address Defendants' qualified immunity argument. Dkt. No. 35. In reply, Defendants assert that Plaintiff's opposition cites no "'controlling authority'" or "'a robust consensus of cases of persuasive authority'" establishing that Defendants' conduct on May 7, 2020, of denying Plaintiff single-cell status, was unconstitutional. Dkt. No. 38 at 6.

Viewing the allegations in the light most favorable to Plaintiff, the Court finds Defendants are not entitled to qualified immunity on the Eighth Amendment claim against them. As discussed above, Plaintiff could allege sufficient facts to state a cognizable Eighth Amendment claim in another amended complaint, *see supra* at 11, and therefore qualified immunity is not appropriate at this time under the first prong. With regard to the second prong, Defendants assert that there is no clearly established constitutional obligation to house an inmate in a single cell based merely on their vulnerability to a generalized risk of infection due to a cancer diagnosis. Dkt. No. 30 at 19. However, Defendants' claim of qualified immunity relies on too narrow a definition of the clearly

13

established right at issue. Existing precedent clearly establishes the right of an individual in custody to protection from heightened exposure to a serious communicable disease. *See Helling v. McKinney*, 509 U.S. 25, 33, 113 113 S.Ct. 2475 (1993) (exposure to inhalants that pose an "unreasonable risk of serious damage to [a prisoner's] future health" was an Eighth Amendment violation when done with deliberate indifference); *Hutto v. Finney*, 437 U.S. 678, 682 (1978) ("jumbl[ing] together" of mattresses used by prisoners with infectious diseases with other prisoners contributed to Eighth Amendment violating punitive isolation conditions); *Parons v. Ryan*, 754 F.3d 627, 677 (9th Cir. 2014) ("Since *Helling* and *Farmer*, we have repeatedly recognized that prison officials are constitutionally prohibited from being deliberately indifferent to policies and practices that expose inmates to a substantial risk of serious harm"); *Andrews v. Cervantes*, 493 F.3d 1047, 1050 (9th Cir. 2007) (prisoner stated Eighth Amendment claim based on failure to screen for infectious diseases or isolate those with infections). Moreover, an official's "legal duty need not be litigated and then established disease by disease or injury by injury." *Estate of Clark v. Walker*, 865 F.3d 544, 553 (7th Cir. 2017; *Maney v. Brown*, No. 6:20-cv-00570-SB, 2020 WL 7364977 at *5, 2020 U.S. Dist. LEXIS 235447 at *17 (D. Or. Dec. 15, 2020) (denying qualified immunity to prison officials because inmates had "a clearly established constitutional right to protection from a heightened exposure to COVID-19, despite the novelty of the virus"). Based on the state of law at the time, the Court cannot agree that Defendants were not on notice that their conduct might violate the Constitution. Other district courts have also denied qualified immunity for Eighth Amendment claims involving prisoner's exposure to Covid-19 based on the allegation that prison officials acted with deliberate indifferent to heightened exposure of inmates to a serious communicable disease. *See, e.g., Fuller v. Amis*, No. EDCV 21-127-SSS (AS), 2023 WL 3822057, at *6 (C.D. Cal. Apr. 13, 2023), *report and recommendation adopted*, No. 521CV00127SSSAS, 2023 WL 3819181 (C.D. Cal. June 2, 2023); *Sams v. California Dep't of Corr.*, No. 521CV00493ODWJDE, 2023 WL 4291459, at *11; (C.D. Cal. May

14

30, 2023); *Fuller v. Houston*, No. EDCV 21-127-SSS (AS), 2022 WL 18144179, at *6-7 (C.D. Cal. Dec. 14, 2022), *report and recommendation adopted*, No. EDCV210127SSSAS, 2023 WL 121979 (C.D. Cal. Jan. 6, 2023); *Hampton v. California*, No. 21-CV-03058-LB, 2022 WL 838122, at *10 (N.D. Cal. Mar. 20, 2022). Accordingly, Defendants' motion to dismiss based on qualified immunity is DENIED without prejudice to Defendant raising the defense at a later stage of the proceedings.

### C. Official Capacity Claim for Damages

Plaintiff seeks monetary relief from Defendants in their individual and official capacities. Dkt. No. 21 at 3-4, 6. Defendants assert that Plaintiff's official-capacity claims for damages are barred by the Eleventh Amendment. Dkt. No. 30 at 20.

The Eleventh Amendment to the U.S. Constitution bars a person from suing a state in federal court without the state's consent. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984). The U.S. Supreme Court has held that state officials acting in their official capacities are not "persons" under Section 1983 because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, such a suit is therefore no different from a suit against the state itself. *Id.*

Accordingly, the Eleventh Amendment bars Plaintiff's claims for monetary relief to the extent that they are based on acts by Defendants in their official capacities. *See id.*; *Nesbit v. Dep't of Pub. Safety*, Nos 06-16428, 06-16623, 283 Fed. Appx. 531, 533 (9th Cir. 2008) (unpublished memorandum disposition) (concluding that the district court properly dismissed prisoners' claims against defendants acting in their official capacities). Defendants' motion to dismiss Plaintiff's damages claims against them in their official capacities is GRANTED, and those claims are DISMISSED with prejudice. Because it is absolutely clear that this jurisdictional bar cannot be cured by further amendment to the complaint, the dismissal of Plaintiff's claims against Defendants in their official capacities

15

is without leave to amend.

### III. Motion for Injunctive Relief

Defendants assert that Plaintiff's request for preliminary injunction should be denied because he fails to demonstrate likelihood of success on the merits, irreparable harm, or that it is in the public interest. Dkt. No. 30 at 20. Plaintiff requested this relief in the SAC, and also in a more recent motion for preliminary injunction. Dkt. No. 42. Defendants filed a motion for an extension of time to file a response to this motion which the Court will deny as unnecessary. Dkt. No. 43.

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.'" *Lopez v. Brewer, et al.*, 680 F.3d 1068, 1072 (9th Cir. 2012) (citation omitted) (emphasis in original). The standard for issuing a TRO is similar to that required for a preliminary injunction. *See Los Angeles Unified Sch. Dist. v. United States Dist. Court*, 650 F.2d 1004, 1008 (9th Cir. 1981) (Ferguson, J., dissenting). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

In light of the dismissal of the SAC with leave to amend, the Court agrees that Plaintiff has failed to demonstrate likelihood of success on the merits at this stage of the proceedings. Accordingly, the motion is DENIED without prejudice.

### CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Defendants S. Albritton, Dr. S. Garrigan, Dr. Sandler, A. Maxfield, and N. Smith's motion to dismiss the SAC is **GRANTED**. Dkt. No. 30. However, the dismissal is **with leave to amend** for Plaintiff to file a third amended complaint that corrects the

16

pleading deficiencies discussed herein.

Plaintiff's official capacity claims for damages are **DISMISSED** with prejudice as barred by Eleventh Amendment immunity. Plaintiff shall not include such claims in the third amended complaint.

2. The SAC is **DISMISSED with leave to amend**. Within **twenty-eight (28) days** of the date this order is filed, Plaintiff shall file a **third amended complaint** to correct the deficiencies described above. The third amended complaint must include the caption and civil case number used in this order, Case No. 20-cv-03885 BLF (PR), and the words "THIRD AMENDED COMPLAINT" on the first page. If using the court form complaint, Plaintiff must answer all the questions on the form in order for the action to proceed. The third amended complaint supersedes the original and all subsequent amended complaints, which will be treated thereafter as non-existent. *Ramirez v. Cty. Of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015). Consequently, claims not included in the third amended complaint are no longer claims and defendants not named therein are no longer defendants. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir.1992).

3. **Failure to respond in accordance with this order by filing a third amended complaint in the time provided will result in the dismissal with prejudice of this action for failure to state a claim, without further notice to Plaintiff.**

4. Plaintiff's motion for injunctive relief is **DENIED** without prejudice. Dkt. No. 42. Defendant's motion for an extension of time is **DENIED** as moot. Dkt. No. 43.

This order terminates Docket Nos. 30, 42, and 43.

**IT IS SO ORDERED.**

Dated: ___July 25, 2023_____                          _____
                                                           BETH LABSON FREEMAN
                                                           United States District Judge

Order Granting MTD-LTA; Directing Pl to file TAC; Denying PI
PRO-SE\BLF\CR.20\03885Bratton_grant-MTD.LTA

17